**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEKISHA NICHOLAS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WAYFAIR INC. and WAYFAIR LLC<br><br>     Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

LEKISHA NICHOLAS (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby brings Plaintiff's Class Action Complaint against WAYFAIR INC. and WAYFAIR LLC (hereinafter referred to as "Defendants" or "Wayfair"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

## INTRODUCTION

1.      This class action seeks compensatory damages, restitution, disgorgement of profits, costs of suit, actual damages, attorneys' fees, costs, declaratory judgment, injunctive relief, and any other relief that this Court deems just and proper arising from Defendants' unfair, unlawful, unethical, fraudulent, unconscionable, and/or deceptive business policies and practices related to the selling of mattresses, bedframes, and/or headboards (collectively, "Beds").  Plaintiff and the Class members were subjected to insects known as *Cimex Lectularius* (commonly known as "bedbugs") that had infested products Wayfair sold and shipped to Plaintiff and the Class.  As a result, Plaintiff and the Class members have been damaged.

2.      Wayfair continues to sell and ship products that are infested by bedbugs to unaware and trusting citizens when it knew, at all times, that the products were infested and crawling with insets that feed exclusively on human and animal blood, in total disregard of the health and safety of Plaintiff and members of the Class. Wayfair failed to eradicate the bedbug problem and continued to sell the infested products for at least two (2) years after it became aware of the bedbug problem and, upon information and belief, continues to sell these products.

1

## PARTIES

3.      Plaintiff Lekisha Nicholas is a citizen of the state of New York.  Plaintiff has been damaged as a result of Defendants' unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent business practices.

4.      Defendant Wayfair Inc. is a Delaware corporation with a principal place of business located at 4 Copley Place, Suite 7000 Boston, Massachusetts 02116.  Defendant Wayfair Inc. is, therefore, a citizen of the states of Delaware and Massachusetts.  Defendant Wayfair Inc. is engaged in the sale and marketing of products, including bedroom furniture.

5.      Defendant Wayfair, LLC is a wholly-owned subsidiary of Wayfair, Inc. Because the sole member of Wayfair, LLC is Wayfair, Inc., Wayfair, LLC is a citizen of the states of Delaware and Massachusetts.

6.      At all times herein mentioned, the acts and omissions of Defendants proximately caused the injuries and damages as herein alleged.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C.§ 1332 as amended by the Class Action Fairness Act of 2005 because:

a.      the number of members of the proposed plaintiff class is greater than 100;

b.      at least one member of the plaintiff classes are citizens of a State different from any Defendant; and

c.      the amount in controversy, aggregated among all individual class members, plus statutory damages and attorney's fees, exceeds $5 million.

8.      This Court has personal jurisdiction over Defendants because Defendants conduct

business in New York. Defendants, themselves or through agents, have marketed and sold products at issue in this case in the State of New York.  Defendants have sufficient minimum contacts with this state, and/or sufficiently avail themselves to the markets of this state through their sales and marketing within this state to render the exercise of jurisdiction by this Court permissible.

9.      Further, this Court has personal jurisdiction over Defendants because they sell and ship the products at issue to consumers anywhere in the United States, including in this District.[1]

10.      Under 28 U.S.C. 1391, venue lies in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District given that Plaintiff purchased the bedroom furniture at issue while in this District; Defendants market, promote, and sell bedroom furniture in this District; and Defendants ship products to this District.

## FACTUAL ALLEGATIONS

11.      The insect, *Cimex Lectularius*, a blood-sucking arthropod, is most often associated with substandard housing, filthy conditions, and poor hygiene.  *Cimex Lectularius* lives in dirty mattresses, bedding, box springs, cracks in bed frames, under loose wallpaper, behind picture frames, and inside furniture and upholstery.  It feeds exclusively on human and animal blood and typically lives up to 10 months.  The insect commonly leaves brown fecal marks on bed sheets and has stink glands that leave an odor described by some as sickeningly sweet raspberries.  Typically feeding every four days, *Cimex Lectularius* sucks blood from its hosts with piercing mouthparts.

---

[1] Wayfair is one of the world's largest online destinations for the home.  See, https://www.wayfair.com/about/. Wayfair "can ship to all 50 states and U.S. territories, though some restrictions may apply." https://www.wayfair.com/wayfair-locations.

3

12.     According to Zappbug, Inc., nymphs or juvenile bedbugs range from the size of a bedbug egg (0.09 inches, 2.5mm) to the size of full adult bedbugs at (0.18 inches, 4.5mm). For reference, 0.1 inches is slightly over the thickness of a quarter. Adult bedbugs are approximately the size of an apple seed.



See, https://www.zappbug.com/bed-bug-pictures/

13.     In addition to economic damages of fumigating the home and destroying contaminated furniture, potential safety risks of bedbug infestations include allergic reactions, rashes, infections, and insomnia.  Having bedbugs may also cause a social stigma that discourages social interaction, as third-parties are reluctant to interact with bedbug hosts for fear that bedbugs, which can travel in clothing, will spread to them as new hosts.  Likewise, victims may become secluded for fear of spreading bedbugs to friends and family.

14.     Entomologists and a public health expert from North Carolina have discovered that the bugs (*Cimex lectularius*) leave behind high levels of the allergy-inducing molecule histamine collected in household dust.  According to their study, even after undergoing a heat treatment and passing three blissfully bed bug-free months, previously infected living spaces can contain up to

4

180 times more histamine than homes that have never hosted the insects.  The data was gathered from 14 infested apartments and 10 un-infested neighboring apartments all in the same complex, and compared to five control apartments located at least 8 kilometers (5 miles) away.  "The high concentrations, persistence, and proximity to humans during sleep suggest that bed bug-produced histamine may represent an emergent contaminant and pose a serious health risk in the indoor environment," they wrote in the journal PLOS ONE.  Bed bugs were not known to produce allergens, though their saliva can cause an immune response following a bite, until a 2015 study found that the insects excrete histamine in their feces to chemically communicate with another. We humans also produce histamine, but use it for other purposes. When our body detects the presence of a foreign object or organism, white blood cells release histamine in order to ramp up a defensive immune response. The resulting inflammatory process creates classic allergy symptoms such as watery eyes and a runny nose.  *See* https://www.iflscience.com/plants-and-animals/bed-bugs-leave-behind-potent-allergen-that-lingers-long-after-theyve-been-zapped/.

**On or Before June 2016 – Wayfair was Aware of its *Cimex Lectularius* Infestation and Still Continued to Sell Infested Products to Plaintiff and the Class Members**

15.     Wayfair, Inc. is a publicly traded company on the NYSE and is purportedly one of the largest online retailers of home goods.

16.     Wayfair, unbeknownst to its customers, has a *Cimex Lectularius* problem, which unknowingly becomes the consumer's problem.

17.      Upon information and belief, Wayfair has known that *Cimex Lectularius* have been infesting several of its mattresses, bedframes, and/or headboards (collectively "Beds") since at least June 2016, due to a myriad of calls from impacted consumers looking for relief and also from online complaints, including but not limited to the following:

San Diego, California Jul 05, 2016

I received my Clique headboard on June 30, 2016. It was delivered to my home in San Diego, and judging from the quick delivery I believe it came from a warehouse in Southern Cal, maybe even San Diego.

I installed the headboard, and the next day woke up with a couple of bug bites. Didn't think much of it. The following morning I was covered i n [*sic*] bites, and found a tiny bedbug on [*sic*] crawling on my stomach. Went to urgent care on July 4th (yesterday) and they verified it was bedbugs - so my wife and I spent all of July 4th ripping the mattresses off, spending about $200 on insecticides, mattress covers, etc., spraying poison through out our bedroom, and washing everything in hot water, drying on extra high heat.

Wasted holiday. I called Wayfair this morning and complained, they instantly said no problem, they'll refund my money. I think Wayfair knows of this problem, as they didn't seem surprised.

Now I am just praying that we nipped it in the bud and don't have to hire a exterminator, etc. Going to report this to the State as well, since an online complany [*sic*] is essentially spreading bedbugs.

*See*:        https://wayfair.pissedconsumer.com/wayfair-bed-bugs-in-upholstered-headboard-clique-20160705877120.html

4MyFriend       Sep 08 [2018]    #1555594

STILL happening!! My friend also just purchased a grey fabric headboard from Wayfair that arrived with a horrific bedbug infestation, at the end of August, 2018! It has cost him hundreds & hundreds of dollars & SO MUCH of his time & ALL of his sleep. I can NOT believe I am reading how long this has been going on!! And they continue to infest more & more homes. They should be shut down!

*See*:        https://wayfair.pissedconsumer.com/wayfair-bed-bugs-in-upholstered-headboard-clique-20160705877120.html


liza      Jun 08 [2018] #1496462

Oh no, I purchased a headboard for my parents after getting rid of some bedding and noticed bedbugs. I wasn't sure about what they were but I see them more and more now...
I'm washing everything and buying spray!
What a pain!!! They never had these before and their bedding was old.

6

*See*:      https://wayfair.pissedconsumer.com/wayfair-bed-bugs-in-upholstered-headboard-clique-20160705877120.html

Saint Paul, Minnesota  Jun 28, 2016
[…]
** * * WARNING. BEDBUGS in upholstered headboard.
(Declare Upholstered Panel Bed) * * * *

We received our shipment in 3 different packages. 2 packages were delivered on one day, and the 3rd package was delivered the following day. Directions were terrible and almost impossible to follow. I had to go by the pictures instead of the directions.
It took almost 3 hours for two of us to put the bed together. Overall the bed was very sturdy and looked great! The bed also came with complimentary BEDBUGS. YES, BEDBUGS!
I called Wayfair and spoke directly with a manager, Kellie. She was very nice and professional. She gave me a full refund but she was not able to offer pick-up and disposal of the bedbug-infested bed because we "threw away the packaging." However, she kindly offered me a 10% coupon to use towards my next purchase.
This is my first and last time purchasing from Wayfair. Now my new house is infested with bedbugs and I have to hire someone to come steam clean and fumigate my new house.

*See*:      https://wayfair.pissedconsumer.com/budbugs-in-upholstered-headboard-20160628873442.html

Silver Spring, Maryland
Oct 03, 2016

 I ordered a beautiful upholstered bed from Wayfair and it was great until I kept waking up to bites on my arms. I thought I might have been allergic to mosquitos because I never saw a bug in my bed and I have never dealt with bedbugs before plus the bites were only on my arms and forehead.

Then one night I saw a bug in my bed and I called my apartment and they had the pest control come in and they confirmed they were bedbugs and that they had come from the headboard. They didn't find any on the mattress at the time, which I ordered from a different company. But now we had to hire an exterminator to come in and we now have to either vacate the place or live out of bags for six weeks. I have not been able to sleep in my room for going on two weeks now.

I sleep on an air mattress in the living room because I am not able to vacate for that

7

long. I am livid and have been seriously inconvenienced. I called Wayfair and they offered me a refund which was a little too easy and let's me know that the know about this issues.

I will be calling the corporate office and demanding they reimburse me for not only having to pay an exterminator but for me having to throw out a brand new mattress that I bought from somewhere else, also for my medical bills because my arms look like I had chicken pox with all these little black spots, and for any other expense or inconvenience this has caused. They really need to get this problem under control because people are going to stop ordering from them and I have no problem going to social media and letting everyone know about this problem.

*See*: https://wayfair.pissedconsumer.com/bed-bugs-20161003929913.html

**Chandresh Thakkar** Feb 09 [2018]  #1430761

I bought the same bed mull house felisa and have had the bedbugs ever since it came. It was my daughters bed and she stopped sleeping on it.

so we realized these were bedbugs . we got a quote with exterminators and they were so expensive . so we tried getting rid of them ourselves using strong chemicals etc. These bugs infested our other bedroom.

Finally we called the exterminators payed them a fortune and they showed us the bedbugs hiding behind the lining of the head board. we are asked to throw away the bed and mattress. I just emailed wayfair about this and I am waiting for their response. in the meantime i googled if any body else has had the same problem and I saw your post.

i am truly disappointed with wayfair. Do you have any advice for me.

*See*: https://wayfair.pissedconsumer.com/bed-bugs-20161003929913.html

Wayfair - !!!BEDBUGS!!!!
Jun 24 [2018]
BEDBUGS!!! Please do your research before purchasing any bedding from Wayfair!

There are reviews upon reviews about their cloth bed frames and BEDBUGS!! I certainly wish I had done mine. The eggs take about 100 for a person to actually realize there is an infestation! I am an extremely clean and borderline OCD person so imagine my surprise to discover the bites I started getting wasn't an allergic reaction to a possibly change of detergent or a rare reaction to a mosquito bite!

My husband started experiencing the same type of bumps but on his arm. We have

literally spent the past 48 hours tearing this entire house apart; all clothing, towels, blankets, anything of that nature we had to treat at the laundry mat, pulling entire rooms apart spraying scrubbing steaming vacuuming crying sweating all the while with that pit in your stomach to realize what has actually happened in your home! We've trashed our bed our couches our pillows for our bed and couches, rugs, and clothing we decided we could do without. We've lost our entire weekend cleaning a problem that I feel we could have prevented had I researched ordering from here a little deeper!

I'm tired! I'm stressed, I'm talking $300 easy to clean up and repair this disaster! So, please please take heed my warning! The beds look nice, and the prices are reasonable but after paying to destroy my own home over the last 2 days it puts this all into perspective.

Not only am I exhausted I'm traumatized, every speck I see I'm doing double take...

I'm not comfortable to sleep in my own room, it's a huge financial burden a huge time burden but emotionally as well, which is the worst out of it all! DO NOT GET BEDDING FROM HERE, ITS BEEN A HUGE NIGHTMARE!!!



*See*: https://wayfair.pissedconsumer.com/bed-bugs-201806241287899.html


Dec. 4, 2016 #10
Ms. Stewart Rated G for Gangsta

My friend bought a bed frame/furniture from them... and ended up having bedbugs.

*See:*          https://www.lipstickalley.com/threads/anyone-ever-shop-at-wayfair-com.1114135/


Wayfair – Clique headboard infested with bedbugs
Sep 08, 2017

These stories are identical to mine. I can't believe it.
Related: Houzz - Josie Reodica complaint and concern

9

We're out almost a thousand dollars because of this horrendous company and Clique headboard. It was a total nightmare to deal with, not only that but Aaron C. from "the customer advocacy team" made us feel as though this was all our fault, they have never had such issues and basically told us that wayfair can't do anything but reimburse us for that POS headboard. We should all file a class action law suit against them.

People have lost belongings and paid out of pocket because of thier lousy mistake. This company is absolutely disgusting.
Review about: <u>Clique Headboard.</u>

Reason of review: Damaged or defective.

<u>*See*</u>:      https://wayfair.pissedconsumer.com/clique-headboard-infested-with-bed-bugs-201709081098015.html


Wayfair - Bedbugs in tuffeted bed
May 18, 20171K views

They sent us a bedbug infested headboard! I asked for our money back and tild [*sic]* them that because of fraud, we had changed bank accounts.
Related: <u>Parks Furniture - BEST PRICES/GOOD FURNITURE</u>

Then they said they couldn't [*sic]* issue refund to new accpunt [*sic]* and gave us store credit. Who would trust buying from them again? We went out and had to buy a new bed and spent over 1000 dollar's on extermination, we asked fir [*sic]* a check, the suoervisor [*sic]* stated that because it had been too long they wouldnt [*sic]* issue us a check.

I am now in persuit [*sic]* of refund as well as reimbursement of exterminator fees, playing nice clearly doesn't [*sic]*  work. I plan on telling eberyone [*sic]*  including media outlets about this, all we wanted was our money back so that we werent [*sic]* in debt ober this new bed!!
Review about: <u>Bed.</u>

Reason of review: Damaged or defective.

Monetary Loss: $1700.

Preferred solution: Full refund.

I didn't like: Awful experience, Bedbugs in tuffeted bed, Bedbugs in bed, Bedbugs wayfair, Rude customer service.

*See*:                https://wayfair.pissedconsumer.com/bed-bugs-in-tuffeted-bed-201705181048867.html

**CEO and Co-Founder Has Direct Knowledge**

18.     Niraj Shah, Chief Executive Officer and Co-Founder of Wayfair, was made aware of Wayfair's Bed Bug problem as early as September 12, 2016 when Plaintiff reached out to Wayfair to seek reimbursement for out of pocket costs to treat her home because of bed bugs in an upholstered Headboard from Wayfair.  See Exhibit A, attached hereto, Email from CEO and Co-Founder of Wayfair to Lekisha Nicholas.

**Wayfair's Warehouse and Wayfair's Concern with Warehouse Bug Infestation**

19.     As is evidenced in Defendants' public filings, Defendant's Products are stored in the same warehouse or are being shipped via Wayfair's Delivery Network.

20.     Wayfair maintains five (5) Castle Gate warehouses from which Small Parcels such as headboards ship. Additionally, large items can also originate from CastleGate warehouses.



*See,*https://s2.q4cdn.com/848638248/files/doc_presentations/2017/W.Presentation_Q1-2017_vF-(1).pdf at page 20.



*See,* https://s2.q4cdn.com/848638248/files/doc_presentations/2017/W.Presentation_Q1-2017_vF-(1).pdf at page 21.



*See*, https://s2.q4cdn.com/848638248/files/doc_presentations/2017/W.Presentation_Q1-2017_vF-(1).pdf at page 22.

 

*See*, https://s2.q4cdn.com/848638248/files/doc_presentations/2017/W.Presentation_Q1-2017_vF-(1).pdf at page 19.



*See*: https://twitter.com/Wayfair/status/1042387473349926925

**Wayfair Has Been Responding to Bed Bug Complaints on the BBB Website.**

14

21.     Defendant has been responding to Bed Bug Complaints on the Better Business

Bureau Website:

JL
★★★★★
11/14/2018

I ordered a tufted fabric bed frim Wayfair for my daughter. She began having issues with her scalp at first. We thought it might be dandruff or dry scalp and treated her hair with different dandruff shampoos. The problem persisted. Over the past year she had random bites her body and her face and we again thought it mosquitoes or other types of insects since we live in the south and it was summer time. I scoured and cleaned her room constantly. She said she would sometime feel something crawling on her and her head itched. We would look in her bed and mattress and didn't see anything. I didn't know what a bed bug looked like. I also wear glasses and can't see fine details close up. We went to the doctor a couple of different times for other reasons and asked them to look at her spots and the doctors didn't think it was bed bugs or even suggest that. Our hair dresser didn't see anything other than small sores on her scalp. We treated for dry scalp. Recently she began having bigger bites on her neck, face, and shoulders and we found live adult bed bugs and dead ones. I contacted customer support after reading many other reports from customers reporting the same issue with fabric headboards and beds ordered from Wayfair. Their pictures and comments were exactly the same as our situation. One customer even posted pictures of a bed in the exact same fabric and the bed bugs were hidden in the exact same spots. I was shocked! Customer support refused to refund my money because it had been over a year and I didn't have an exterminator report. I do have pictures of the bugs, my daughter's bites, and the bed. Wayfair also told me I should have contacted them sooner if my daughter had that many bites and issues. She wasn't covered and it wasn't a huge infestation. The bites were random and would go away and another would pop up in a different place on her body. We did have it checked out by doctors and dismissed as alllegies. I'm very disappointed in Wayfair and will never order from them again. This is a known issue with these products regardless of the warehouse or manufacturer they are shipped from. My daughter has to heal and overcome seeing live bugs in her bed and on her body. I can't afford a new bed or mattress set at this time either. Never again! Shame on you!



**Wayfair, LLC Response**
11/15/2018
Hi *****, we are very sorry to hear about your unpleasant experience. Please email us your order number at BBBReview@wayfair.com and we will work to sort this out. Thanks!


Shaw N
★☆☆☆☆
11/06/2018

Horrible ordered beds for my children, beds had bed bugs.



**Wayfair, LLC Response**
11/06/2018
Hi ****, We are very sorry to hear about your unpleasant experience. Please email us your order number at BBBReview@wayfair.com and we will work to sort this out. Thanks!


Amy N.
★☆☆☆☆
08/27/2018

WayFair is selling tufted bed frames with Bed Bugs infested in them. Never have I EVER had bed bugs in my home. I literally ripped every piece of fabric off my $500+ purchase (which is only a year old) to find it riddled with bed bugs and eggs!!! This is sickening, upsetting, and traumatic for someone who has never experience such infestation!!! This is in no way OK. STOP SELLING TUFTED BED FRAMES PERIOD!!!!



**Wayfair, LLC Response**

08/29/2018
Hi ***, we are very sorry to hear about your unpleasant experience. Please email us your order number at BBBReview@wayfair.com and we will work to sort this out. Thanks!

22.     Defendants have, and had, exclusive knowledge of their storage procedures for their Beds prior to shipment and of the condition of the Beds prior to shipment.

23.     Defendants directly marketed to Plaintiffs and the proposed Classes.

**Plaintiff's Purchase of Wayfair's Bedbug-Infested Bed**

24.     Plaintiff purchased a headboard from Wayfair in or about May of 2016.

25.     Plaintiff is not relying in any way on the "Terms of Use" on Wayfair.com in bringing this lawsuit.

26.     In fact, Plaintiff did not read, and was not aware of, the Terms of Use of Wayfair LLC's website at the time Plaintiff made the purchase or created Plaintiff's user account at Wayfair.com. The purchase was readily completed without Plaintiff viewing the terms which Plaintiff believes Defendant will attempt to rely on to purportedly relinquish Plaintiff's important and customary rights of trial by jury, court access, availability of damages and remedies provided by statute, and to bring or join a class action.

27.     Importantly, the Terms of Use link can only even be seen by clicking the down arrow more than 150 times past the search bar of the home page and is found in hard-to-see font below the larger font sections contained in the About Us and Customer Services.

28.     The "Terms of Use" link is equally hidden and/or inconspicuous throughout the checkout process.

29.     Moreover, Plaintiff did not see, review, or become aware of any of the provisions of Terms of Use when creating Plaintiff's account at Wayfair.com.  Defendants do not require

users such as Plaintiff to actually view the Terms before creating an account.

30.     As a result, Plaintiff did assent to the Terms of Use.

31.     Plaintiff entered into a single agreement with Wayfair. Namely, a purchase agreement for a headboard, whereby Plaintiff agreed to purchase a particular headboard and Defendant agreed to supply said headboard. The purchase agreement did not incorporate by reference the arbitration clause located in Defendant's Terms of Use that Plaintiff did not see.

32.     Defendants failed to disclose that their headboards were stored in a facility infested with *Cimex Lectularius* or that the headboards were infested with *Cimex Lectularius*.

33.     Due to Defendants' material omissions of fact, in May of 2016, Plaintiff purchased a Mulhouse Upholstered Headboard.

34.     Plaintiff received the Wayfair headboard soon thereafter.

35.     Unbeknownst to Plaintiff, Defendants' product was infested with *Cimex Lectularius* and was stored in a facility infested with *Cimex Lectularius*.

36.     Unaware of the infestation of *Cimex Lectularius*, Plaintiff brought the headboard into Plaintiff's home and installed the headboard in her bedroom.

37.     Bed bugs normally feed late at night or early morning when the host is in deepest sleep. **Most people are unaware when being fed upon** – the bed bug is stealthy and its saliva contains desensitizing agents that prevent the host from feeling its mouthparts penetrate the skin. The bite sites are usually small, pinprick-sized lesions that may or may not become inflamed. Reaction to bed bug bites varies from person to person. Most people show no reaction the first time they are bitten, but subsequent bites may develop into welts that itch.  Some people react severely with welts that itch for weeks, and individuals prone to keloid scarring may be affected

dramatically. They feed for 3-15 minutes and then leave the host. **It is rare to actually find bed bugs feeding**. Once in their protected hiding spots, the blood meal is digested. During this process, they will defecate, leaving **reddish brown spots** that are characteristic of bed bug infestations.

38.     Unbeknownst to Plaintiff, Plaintiff was bitten by the *Cimex Lectularius* on her hands, thighs, legs, and feet.  Plaintiff's hand had even swelled up.  Plaintiff continued to be bitten until Plaintiff observed numerous small insects, later identified as *Cimex Lectularius*, scurrying about Plaintiff's headboard and property around it.

39.     Plaintiff hired a bed bug exterminator who confirmed the source of the bed bugs was the headboard.

40.     In addition to the treatments applied by the bed exterminator, Plaintiff had to wash everything she owned that was washable.  In addition, Plaintiff had to throw away additional property as well.

41.     After discovering the bedbugs and their source, Plaintiff immediately notified Wayfair that the headboard they sent was infested by BedBugs.  Plaintiff's email and Wayfair's response is attached hereto as Exhibit A.

42.     Defendants failed to compensate Plaintiff for the following damages, among others: the cost of exterminating the bed bugs and for the damage to her surrounding property; damage and loss to surrounding property; damage to real estate; the time and effort to deal with eradicating the bed bugs – which can be upwards of 80 hours.

43.     Furthermore, Wayfair fails to compensate complaining customers for their personal injuries (bed bug bites) and the emotional distress that comes with learning that there are bed bugs in ones living space.

44.     Although Defendants sound as though they will stand by their products and make things as right as can be, Defendants leave Plaintiff and the Class Members with significant out of pocket losses.

45.     Upholstered headboards that are infested by bed bugs are still being sold today by Defendants.

46.     Plaintiff would not have purchased a headboard from Wayfair had Wayfair disclosed to Plaintiff that its headboard had bedbugs or had a higher risk of having bedbugs.

47.     Plaintiff spent countless hours, money, and effort attempting to eradicate the infestation.

48.     Although Plaintiff only purchased the headboard from Defendants, based upon consumer complaints posted online, Defendants' Beds— not just headboards— are infested with bedbugs in the same fashion.

49.     Due to Defendants' material omissions and/or misrepresentations, Plaintiff purchased the headboard.

50.     Despite knowing that their Beds were infested with bedbugs from the countless consumer complaints they received, Defendants intentionally concealed this fact from Plaintiff and other Class members in an effort to unfairly induce them to purchase a worthless and dangerous product that Defendants knew no reasonable consumer would purchase had they disclosed the infestation.

51.     Defendants' exclusive knowledge that their Beds are infested with bedbugs, and Plaintiff's and other Class members' reliance on Defendants to disclose whether their Beds are infested with bedbugs, places Defendants in a unique position of influence and superiority over

20

the consumers with respect to their purchases of Defendants' Beds. Defendants' position of influence and superiority is heightened by the fact that 1) no reasonable consumer would expect their new Beds to be infested with bedbugs, 2) such infestation cannot be detected by Plaintiff or Class members until after the purchase, and 3) consumers are effectively forced to trust Defendants that their Beds are not infested with bedbugs.

52.     Defendants represent that their Beds and— in Plaintiff's case— headboard, are of high quality and fit for their intended purposes while simultaneously concealing from Plaintiff and Class members that the Beds are not.

53.     Defendants knew that consumers such as Plaintiff and the proposed Classes would be the end purchasers of the Beds and the target of their misrepresentations.

54.     Defendants intended that their warranties, statements, representations, and concealments would be considered by the end purchasers of the Beds, including Plaintiff and the proposed Classes.

55.     Plaintiff and the proposed Classes are the intended beneficiaries of Defendants' implied warranties.

## CLASS ALLEGATIONS

56.     This action may be brought and properly maintained as a class action pursuant to the provisions of the Fed. R. Civ. Pro. 23.

57.     Plaintiff brings this action on behalf of herself and classes of all others similarly situated. The Classes are defined as follows:

> **National Class:** All persons in the Unites States who purchased a headboard, mattress, bedframe, or other component of a bed (collectively, "Bed") from Wayfair that contained bedbugs.

21

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased a headboard, mattress, bedframe, or other component of a bed (collectively, "Bed") from Wayfair that contained bedbugs.[2]

**New York Class:** All persons in the State of New York who purchased a headboard, mattress, bedframe, or other component of a bed (collectively, "Bed") from Wayfair that contained bedbugs.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

59.     Excluded from the Classes are:

i.      Defendants and any entities in which one or more Defendants have a controlling interest;

ii.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

iii.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

iv.     Any claims for personal injury, wrongful death, and/or emotional distress as a result of Defendants' practices;

v.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

vi.     Any attorneys representing the Plaintiffs or the Class; and

vii.    All governmental entities.

---

[2] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq*.); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §407.010, *et seq*.); New Jersey (N.J. Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §349, *et seq*.); and Washington (Wash. Rev. Code §19.86.010, *et seq*.).

60. Defendants subjected Plaintiff and the Proposed Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practice.

61. **Numerosity**: The Classes are so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the classes include thousands of members.

62. **Common Questions of Law and Fact Predominate**: There are questions of law and fact common to the Classes and which predominate over any individual issues. Common questions of law and fact include, without limitation:

a. Whether Defendants had a duty to prevent the bedbug infestation in the Beds;

b. Whether Defendants had a duty to detect the bedbug infestation in the Beds;

c. Whether Defendants were required to notify Plaintiff and the other members of the Class of the bedbug infestation in the Beds;

d. Whether Defendants had a duty to remediate the bedbug infestation in the Beds;

e. Whether Defendants breached these duties;

f. Whether Defendants' conduct constituted an unfair or deceptive act within the meaning of the Consumer Fraud and Deceptive Business Practices Act;

g. Whether Defendants unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted material facts and/or made material representations regarding the Beds;

h. Whether Defendants unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Classes into purchasing the Beds based on omissions, misrepresentations, and/or false promises;

i. Whether the Defendants engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by failing to meaningfully and adequately disclose that the Beds are stored in a facility with bedbugs;

23

j.      Whether Defendants engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by failing to take the steps to reasonably prevent bedbugs from infesting their Beds;

k.      Whether selling Beds infested with bedbugs is an unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent trade practice in violation of New York law;

l.      Whether Defendants' marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

m.      Whether Plaintiff and the Classes are entitled to compensatory, actual, and/or statutory damages as a result of Defendants' unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct;

n.      Whether Defendants violated the applicable consumer protection statutes;

o.      Whether Defendants concealed material facts in their advertising materials and agreements and/or failed to adequately disclose to Plaintiff material facts;

p.      Whether Defendants have engaged in deceptive acts or practices in connection with the sales and/or marketing of their Beds;

q.      Whether Defendants breached one or more agreements with Plaintiff and the Class Members;

r.      Whether Defendants were unjustly enriched;

s.      Whether Defendants' agreement is unconscionable and/or contain unconscionable provisions;

t.      Whether Plaintiff and the Classes are entitled to actual damages; and/or

u.      Whether Plaintiff and the Classes are entitled to injunctive, declaratory relief, or other equitable relief.

63.     **Ascertainable Class**: The Classes are ascertainable in that each member can be identified using information contained in Defendants' records.

64.     **Adequacy**:  Plaintiff will fairly and adequately represent and protect the interests of the Classes because:

a.      Plaintiff has retained counsel experienced in the prosecution of class action

24

litigation and counsel will adequately represent the interests of the Classes.

b.       Plaintiff and their counsel are aware of no conflicts of interests between Plaintiff and absent Class members;

c.       Plaintiff has or can acquire adequate financial resources to assure that the interests of the Classes will not be harmed; and

d.       Plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel to vigorously prosecute this litigation.

65.    **Typicality**: In all relevant respects, Plaintiff's claims are typical of those of the other Class members in that they, like the other members of the proposed classes, were sustained because they have been subject to similar wrongdoing.  Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class members.  Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

66.    **Superiority**: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. Class action treatment will also permit the adjudication of relatively small claims by certain class members, who could not individually afford to litigate a complex claim against the named defendants who have more resources. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical, as the cost of litigation is almost certain to exceed any recovery they would obtain.  Plaintiff is

unaware of any difficulty likely to be encountered in the management of this case that would preclude its maintenance as a class action.

67.     This lawsuit may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because Plaintiff and the proposed Classes seek declaratory and injunctive relief, and all of the above factors of numerosity, common questions of fact and law, typicality, and adequacy are present.  Moreover, Defendants have acted on grounds generally applicable to Plaintiff and the proposed Classes as a whole, thereby making declaratory and/or injunctive relief proper and suitable remedies.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
**(On Behalf of Plaintiff, the National Class, and the New York Subclass)**

68.     Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

69.     Plaintiff and Defendants have contracted to purchase a headboard.  ("Purchase Agreement").

70.     The duty of good faith and fair dealing is implied into the performance of every contract.  Its purpose is to ensure that parties do not take advantage of each other or do anything that will destroy the other party's right to receive the benefit of the contract.

71.     Nevertheless, Defendants knowingly and intentionally breached their duty of good faith and fair dealing and failed to provide to Plaintiff the headboard Plaintiff contracted for by providing a headboard to Plaintiff that, unbeknownst to him, was infested by bedbugs and therefore completely worthless and dangerous to him.

26

72.    Defendants' actions have unfairly destroyed Plaintiff's benefit under the contract.

73.    Just as Defendants breached their implied duty of good faith and fair dealing by selling Plaintiff an infested headboard, they breached their implied duty of good faith and fair dealing to the other members of the Classes by selling Class members infested Beds.

74.    Plaintiff and members of the Classes have sustained damages that were proximately caused by Defendants' breach of the agreement.

### COUNT II
### NEGLIGENCE
**(On Behalf of Plaintiff, the National Class, and the New York Subclass)**

75.    Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing allegations of this Class Action Complaint as if fully set forth herein.

76.    At all relevant times, Defendants owed Plaintiff a duty to exercise ordinary care for the safety of Plaintiff and the Class.

77.    In breach of the duty alleged hereinabove, Defendants were negligent in one or more of the following respects:

a.    Failure to maintain the facility in which the headboards were stored;

b.    Failure to maintain the failed to prevent the headboards from becoming infested with bedbugs;

c.    failed to take necessary steps to prevent the infestation of the headboards;

d.    failed to warn the Plaintiff and the Class of the dangerous condition and infestation of the headboards;

e.    failed to take precautionary measures to prevent infestation of the Plaintiff's the headboards and those of the Class;

27

      f.      failed to clean and properly maintain the headboards so as to prevent insect infestation;

      g.      failed to timely disinfect the Plaintiff's apartment and those of the Class after the headboard infestation was discovered; and

      h.      failed to warn the Plaintiff and the Class of the threat to her/their health and safety from the headboards which were infested with bedbugs.

78.      As a proximate result of Defendants' negligence, Plaintiff and the Class have sustained injury in that bedbugs have infested their units and have, among other things, caused them:

      a.      property loss beyond the product purchased, by destroying and/or forcing them to destroy or dispose of certain personal property including furniture, clothing, etc., to eradicate the insects and larvae and to ensure that they do not unwittingly transport these insects to other persons and places; and

      b.      the building and all apartments therein were of substantially diminished value because of Defendants' failure to prevent the bedbug infestation.

## COUNT III
## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW SECTION 349, *et seq*.
### (On Behalf of Plaintiff and the New York Subclass)

79.      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.      Plaintiff brings this claim pursuant to New York General Business Law Section 349 ("GBL 349" or the "Act") on behalf of herself and members of the New York Class.

81.      GBL 349 prohibits "deceptive acts or practices in the conduct of any business, trade

or commerce or in the furnishing of any service."

82.   The conduct described in this Complaint constitutes a violation of GBL 349.

83.   Defendants engaged in a deceptive act or practice in violation of the GBL 349 by knowingly misrepresenting to Plaintiff and members of the Class the quality and characteristics of the Beds and by concealing from Plaintiff and Class members that the Beds was infected with bedbugs.

84.   In accordance with Subsection (h) of GBL 349, Plaintiff seeks an order enjoining Defendants from continuing these unlawful deceptive acts and practices. Absent such an order, Defendants will continue to falsely and misleadingly advertise the Beds, and in doing so, irreparably harm the New York Class. 73.

85.   As a consequence of Defendants' deceptive acts and practices, Plaintiff and other New York Class members were injured in fact and suffered an ascertainable loss of monies since the Product they received was worth less than they paid. As such, in accordance with subsection (h) of GBL 349, Plaintiff and the New York Class seek actual and punitive damages.

86.   Defendants' deceptive acts and practices are continuing.

87.   Defendants intended for Plaintiff and the New York Class members to rely on and accept as true their misrepresentations and concealment in deciding whether to purchase the Beds.

88.   Defendants' misrepresentations and failure to disclose that the Beds were infested with bedbugs was likely to deceive consumers with respect to the condition of the Beds and with respect to whether consumers would decide to purchase the Beds.

89.   Had consumers known that Defendants' representations were untrue and that the Beds were infested with bedbugs, they would not have purchased the Beds.

90.     Defendants' misrepresentations and concealment occurred before Plaintiff and the New York Class decided to purchase Beds.

91.     Defendants' misrepresentations and concealments did in fact deceive Plaintiff and the New York Class with respect to the Beds' condition at the time of sale.

92.     Defendants' misrepresentations and false claims did in fact deceive and cause Plaintiff and the New York Class members to purchase the Beds.

93.     Defendants' misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

94.     Defendants' misrepresentations and concealment are material because any reasonable consumer would have considered whether the Beds were infested with bedbugs.

95.     As a result of Defendants' misrepresentations and concealment, Plaintiff and the New York Class members have suffered statutory and actual damages in that they have purchased Beds they would not have purchased had they known the Beds were infested with bedbugs.

96.     As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendants set forth above, Plaintiff and the New York Class members are entitled to injunctive relief the Act.

97.     Defendants' deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the New York Class members to an award of attorney fees and costs under the Act.

**COUNT IV**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW SECTION 350,** *et seq.*
**(On Behalf of Plaintiff and the New York Subclass)**

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     Plaintiff brings this claim pursuant to New York General Business Law Section 350 ("GBL 350" or the "Act") on behalf of herself and members of the New York Class.

100.    GBL 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

101.    The conduct described in this Complaint constitutes a violation of GBL 350.

102.    New York General Business Law Section 350-a ("GBL 350-a") defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." GBL 350-a also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in light of such representations with respect to the commodity … to which the advertising relates."

103.    As alleged above, by advertising, marketing, distributing, and/or selling the Beds with the deceptive claims detailed above, and without the requisite disclaimer, to Plaintiff and the New York Class, Defendant has engaged in, and continues to engage in, false advertising, and thus has violated, and continues to violate, GBL 350.

104.    Plaintiff seeks an order enjoining Defendants from continuing this false advertising and misbranding. Absent an order enjoining these activities, Defendants will continue to mislead the New York Class as to the presence of bed bugs in the Beds, and in doing so, will irreparably

31

harm each of the New York Class members.

105.    As a direct and proximate result of Defendants' violation of GBL 350, Plaintiff and the New York Class have also suffered a loss of monies, because the Beds they received was worth less than they paid. Plaintiff and the New York Class seek actual damages and punitive damages.

**COUNT V**
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On Behalf of Plaintiff and the Multi-State Class)**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Consumer Fraud Acts of the States in the Multi-State Class[3] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

108.    Defendants intended that Plaintiff and each of the members of the Multi-State Class would rely upon their deceptive representations as to the characteristics and quality of the Beds in selling them to Plaintiff and members of the Class, and Plaintiff and members of the Class in fact were reasonably misled by this deceptive conduct.

109.    Moreover, Defendants intentionally concealed the fact that the Beds were infested with bedbugs from Plaintiff and members of the Class to induce them to purchase the Beds.

110.    Plaintiff and members of the Class would not have purchased the infested Beds had Defendants not misrepresented the quality and characteristics of the Beds and concealed the bedbug infestation from Plaintiff and the Class.

---

[3] California (Cal. Bus. & Prof. Code §17200, *et seq*.); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §407.010, *et seq*.); New Jersey (N.J. Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §349, *et seq*.); and Washington (Wash. Rev. Code §19.86.010, *et seq*.).

111.    As a direct and proximate result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Class have sustained damages in an amount to be proven at trial.

112.    In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of attorney fees and punitive damages is appropriate.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On behalf of Plaintiff, the National Class, and the New York Subclass)**

113.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

114.    Defendants are merchants engaging in the sale of goods to Plaintiff and members of the Classes.

115.    There was a sale of goods from Defendants to Plaintiff and the members of the Classes.

116.    Defendants, as the seller, marketer, and/or distributor of the Beds, impliedly warranted that the Beds were of merchantable quality and, among other warranties, that the Beds would pass without objection in the trade or industry, and were fit for the ordinary purpose for which Beds are used, such as to be placed in a bedroom as décor and to hold or decorate a bed for people to sleep on.

117.    These aforementioned implied warranties were made by Defendants prior to Plaintiffs' and Class members' purchases of the Beds.

118.    Because of the Beds' problems, i.e., the infestation of bedbugs in the Beds, the Beds cannot perform their ordinary purpose, would not pass without objection in the trade and industry,

33

and do not conform to Defendants' promises and affirmations.  The Beds are entirely worthless and dangerous.

119.    Defendants breached their implied warranties by selling, marketing, and promoting the Beds with a defect of an existing infestation of bedbugs, a defect not known to and not likely to be discovered by Plaintiff or members of the Classes who shop online.  A bedbug-infested Bed is not fit for its ordinary purpose, as any person sleeping near or on a bedbug-infested Bed will be bitten, and any nearby surrounded furniture is likely to become infested.

120.    Plaintiff gave Defendants notice of the breach of these warranties within a reasonable time after discovery of the infestation.  Additionally, Defendants were on notice of this breach as they were aware that their Beds were infested with bedbugs from the myriad consumer complaints they have received.

121.    Privity exists because Plaintiff and Class members purchased the Beds directly from Defendants, because Plaintiff and Class members were the intended beneficiaries and intended end-purchasers and user of the Beds, and because Defendants advertised and represented the Beds' quality and characteristics directly to Plaintiff and Class members.

122.    Any language used by Defendants to attempt to exclude or limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers regarding the existence and nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Defendants' knowledge of the defect at the time of sale, because the warranty fails to conform to the requirements limiting implied warranties under applicable law, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or

manufacture, Defendants knew or should have known that the Beds were at all times defective, including at the time Plaintiff and Class members purchased the product.

123.    As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these Beds, or the difference in value between the Beds as warranted and the Beds as actually sold, as well as consequential and incidental damages which are, in the aggregate, in excess of $5 million.

### COUNT VII
### VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT
### (On behalf of Plaintiff, the National Class, and the New York Subclass)

124.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

125.    The Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. §§ 2301, *et seq.*, provides a private right of action by purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of an express or implied warranty. See 15 U.S.C. § 2310(d)(1). As demonstrated herein, Defendants failed to comply with the terms of their implied warranties with regard to the defective Beds.

126.    The Beds are "consumer products" as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act because they are tangible property held for sale to consumers for household purposes.

127.    Plaintiff and members of the proposed Classes are "consumers," as that term is defined in § 2301(3) of the Magnuson-Moss Warranty Act.

128.    Defendants are "warrantors" as that term is defined in § 2301(5) of the Magnuson-

Moss Warranty Act or "suppliers" within the Act.  Defendants offered implied warranties of their products that put Defendants in privity with Plaintiff and the Classes.

129.    Defendants' written affirmations of fact, promises and/or descriptions, as alleged herein, are "written warranties" within the meaning of § 2301(6) of the Magnuson-Moss Warranty Act.

130.    Defendants' "implied warranties" are within the meaning of § 2301(7) of the Act.

131.    As set forth more fully in Count V, Defendants have breached their implied warranties to Plaintiff and Class members.

132.    Plaintiff gave Defendants notice of the breach of these warranties within a reasonable time after discovery of the infestation.  Additionally, Defendants were on notice of this breach as they were aware that their Beds were infested with bedbugs from the myriad consumer complaints they have received.

133.    Privity exists because Plaintiff and Class members purchased the Beds directly from Defendants, because Plaintiff and Class members were the intended beneficiaries and intended end-purchasers and user of the Beds, and because Defendants advertised and represented the Beds' quality and characteristics directly to Plaintiff and Class members.

134.    Defendants were given a reasonable opportunity to cure their failure to comply with implied warranties.  However, Defendants' "cures" were inadequate and did not fully address the injuries complained of herein.

135.    As a direct and proximate result of Defendants' breaches of the written and implied warranties as provided Magnuson- Moss Warranty Act, Plaintiff and Class members have sustained damage to their property in the form of a bedbug infestation of their home and personal

property, including but not limited to the bed, bedroom furniture, bedding, and other property, as well as consequential damage to additional personal property as a result of the bedbug eradication process and the required preparations for carrying out the process.  Additionally, Plaintiff suffered damages in the form of economic loss equal to the total purchase price of these unfit Beds, or the difference in value between the Beds as warranted and the Beds as actually sold, as well as consequential and incidental damages.

136.    As a further direct and proximate result of Defendants' breaches of and failure to comply with their obligations under the MMWA and the written and implied warranties they provided, Defendants violated the MMWA, thereby causing Plaintiff and the Class Members to suffer significant damages.

137.    Finally, as an additional direct and proximate result of Defendants' breaches of, and failure to comply with, their obligations under the MMWA and the written and implied warranties they provided, Defendants violated the MMWA, thereby causing Plaintiff to suffer economic loss, including but not limited to extermination expenses, expenses associated with replacing personal property known or reasonably feared to be infested with bedbugs or bedbug eggs.

## COUNT VIII
## FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff, the National Class, and the New York Subclass)

138.    Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

139.    As set forth more fully above, Defendants knowingly and intentionally concealed material facts and made numerous false representations with the intent to deceive Plaintiff and

37

Class Members and to entice consumers to purchase Beds from Defendants that Defendants knew no consumer would buy, were the bedbug infestation disclosed.

140.    Defendants' false representations were material to the transactions between Defendants and Plaintiff and Class Members.  Further, Defendants intentionally concealed material facts at the very heart of these transactions.  Defendants made these false representations and concealed these material facts with the intent to mislead Plaintiff and Class Members.

141.    Defendants have engaged in a common scheme of fraud, through which they intentionally deceived consumers by failing to disclose risks and defects in the Beds, including to Plaintiff and members of the proposed Class.

142.    Defendants perpetrated the common scheme of fraud complained of herein by omitting, or failing to disclose to Plaintiff and Classes, that the Beds were defective and that in many cases they were not fit for household use.

143.    Plaintiff and Class Members were justified in relying upon Defendants' false representations and/or concealments, and did in fact rely upon them and were misled.

144.    Defendants' concealments and misrepresentations were common and uniform with respect to Plaintiff and Class Members and enticed consumers to purchase the Beds.

145.    Defendants knowingly and intentionally made these false representations and concealed these material facts.

146.    Defendants' concealments were material, as any reasonable consumer such as Plaintiff would not have purchased the Beds had they been informed that the Beds were infested with bedbugs.

147.    As a direct and proximate result of Defendants' common scheme of fraud, Plaintiff

and the Classes were damaged.

148.     Defendants' conduct was intentional, willful, wanton, malicious and egregious, and as a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class Members have suffered damages entitling them to compensatory and punitive damages, plus interest, attorney's fees and costs in an amount to be determined at trial.

**COUNT IX**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff, the National Class, and the New York Subclass)**

149.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

150.     To the detriment of Plaintiff and the Classes, Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

151.     Plaintiff and the Classes conferred a benefit on Defendants when they paid Defendants approximately for Beds tainted with harmful bedbugs that resulted in a value far less than the retail price.

152.     Defendants unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which, under the circumstances, would be unjust to allow Defendants to retain.

153.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained profits received by Defendants as a result of their inequitable conduct as more fully stated herein.

**COUNT X**
**DECLARATORY JUDGMENT/INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff, the National Class, and the New York Subclass)**

154.     Plaintiff realleges and reincorporates the allegations contained within each of the foregoing allegations as if fully rewritten.

155.    Defendants have engaged and continue to engage in the fraudulent, deceptive, and misleading acts and practices described herein.

156.    An actual and justiciable controversy exists between Defendants and Plaintiff and Classes.

157.    Plaintiff and Class Members seek, and are entitled to, a declaration from the Court that Defendants' acts and practices in intentionally concealing from consumers that their Beds are infested with bedbugs are false, deceptive, misleading, and/or unlawful and in violation of applicable laws as described herein, entitling Plaintiff and the Classes to preliminary and permanent injunctive relief to enjoin Defendants from continuing to engage in these deceptive, false, misleading, and/or unlawful acts and practices.

158.    Plaintiff and Class Members have no adequate remedy at law to deter the continuing activity on the part of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.    A determination that this action is a proper class action maintainable pursuant to Fed. R. Civ. Pro. 23;

B.     An award of restitution of all fees at issue paid to Defendants by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

D.    Disgorgement of the ill-gotten gains derived by Defendants from its misconduct;

E.    An award of actual damages in an amount according to proof;

F.    An award of statutory, exemplary, and punitive damages;

40

H.      An award of pre-judgment interest at the maximum rate permitted by applicable law;

I.      Reimbursement of all costs and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law and the contract(s) with Defendant; and

J.      Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.


Dated: April 5, 2019                              **BURSOR & FISHER, P.A.**

                                                  By:      /s *Joshua D. Arisohn*
                                                          Joshua D. Arisohn

                                                  Scott A. Bursor
                                                  Joshua D. Arisohn
                                                  888 Seventh Avenue
                                                  New York, NY 10019
                                                  Tel:  (646) 837-7150
                                                  Fax: (212) 989-9163
                                                  E-Mail: scott@bursor.com
                                                          jarisohn@bursor.com

                                                  Katrina Carroll (To Be Admitted *Pro Hac Vice*)
                                                  **LITE DEPALMA GREENBERG**
                                                  111 W. Washington Street
                                                  Suite 1250
                                                  Chicago, IL  60602
                                                  Tel: 312.750.1265
                                                  Fax: 312.212.5919
                                                  E-Mail: kcarroll@litedepalma.com

                                                  Tiffany M. Yiatras (To Be Admitted *Pro Hac Vice*)
                                                  **CONSUMER PROTECTION LEGAL, LLC**
                                                  308 Hutchinson Road
                                                  Ellisville, Missouri 63011-2029
                                                  Tel: 314-541-0317

E-Mail: tiffany@consumerprotectionlegal.com

*Attorneys For Plaintiffs And The Proposed Class*