**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 1 6 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEKISHA NICHOLAS, individually and on
behalf of all others similarly situated,

Plaintiff,

– against –

WAYFAIR INC. and WAYFAIR LLC,

Defendants.

**ORDER COMPELLING
ARBITRATION**

19-cv-1974

**Parties:**

For Plaintiff

For Defendants

**Appearances:**

Kyle A. Shamberg
Carlson Lynch, LLP
111 W. Washington Street
Suite 1240
Chicago, IL 60602
312-750-1265

Robert B. Ellis
A. Katrine Jakola
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000



**Jack B. Weinstein, Senior United States District Judge:**

## Table of Contents

I. Introduction ................................................................................................. 1

II. Facts ......................................................................................................... 1

III. Law ......................................................................................................... 4

IV. Application of Law to Facts ...................................................................... 5

    A.       Acceptance of the Terms and Conditions............................................. 5

    B.       Scope of the Agreement ...................................................................... 7

    C.       Unconscionability ............................................................................... 8

    D.       Party Enforcing the Arbitration Agreement ...................................... 10

V. Conclusion ............................................................................................... 11

### I. Introduction

Plaintiff Lekisha Nicholas brings suit on behalf of a proposed class of individuals alleged to have purchased from Defendants Wayfair Inc. and Wayfair LLC (collectively, "Defendants") products infested by bedbugs. Plaintiffs seek substantial damages for having to debug entire homes through extermination as the varmints took over households.

Defendants move to compel arbitration based on Plaintiff's acquiescence to Defendants' website "terms and conditions." Plaintiff opposes.

Courts must pay special attention to the contracts of adhesion used in internet consumer commerce. The instant arbitration agreement passes muster on its facts. Arbitration is ordered.

### II. Facts

Plaintiff is a well-informed internet consumer. She is a college graduate who has worked in management consulting and at a prominent bank. Evid. Hr'g Tr. 30:17–22, 32:2–3, Oct. 2, 2019. Wayfair Inc. is engaged in the marketing and sale of bedroom furniture, among other household items. Compl. ¶ 4, ECF No. 1. Wayfair LLC is a wholly-owned subsidiary of

Wayfair Inc. *Id.* ¶ 5. Defendants' Director of Storefront Engineering, Jonathan Klein, and Plaintiff testified at an evidentiary hearing conducted by the court. *See generally* Evid. Hr'g Tr.

Defendants' regularly kept technical records captured Plaintiff's repeated use of Defendants' website, Wayfair.com. *See* Wayfair Ex. 1 (filed under seal as Clickstream Report, ECF No. 27-1); Evid. Hr'g Tr. 8:7–9:17. In 2016, Plaintiff purchased a headboard from Defendants. Evid. Hr'g Tr. 24:23–25:1. When placing her order, she clicked "Submit Order," immediately under which was the text "By placing this order, you are agreeing to our terms and conditions[.]" *See* Wayfair Ex. 2 (emphasis in original); Decl. Jonathan Klein ¶¶ 6–7, ECF No. 15-3 (emphasis in original); Suppl. Decl. Jonathan Klein ¶ 11, ECF No. 26. The text was in black on a white background, and the underlined text denoted a hyperlink. Wayfair Ex. 2; Decl. Jonathan Klein ¶ 6. Plaintiff accessed the webpage containing the terms and conditions before she purchased the headboard; the webpage was open for 107 seconds. Decl. Jonathan Klein ¶ 7; Suppl. Decl. Jonathan Klein ¶ 10; Evid. Hr'g Tr. 16:6–11. Later in the day, her first order was cancelled, and the same headboard was ordered in a different color, using a "Submit Order" button without the terms and conditions text immediately below it. Decl. Jonathan Klein ¶ 7; Suppl. Decl. Jonathan Klein ¶ 10. Plaintiff remembers making the purchases but does not remember clicking on the terms and conditions webpage or reading the terms and conditions. Evid. Hr'g Tr. 25:6–13. The terms and conditions were also available through a link appearing on the bottom of every page of the website. Decl. Jonathan Klein ¶ 9.

The terms and conditions Plaintiff accessed state that specified websites, including the one accessed by Plaintiff, are provided "subject to . . . compliance with these Terms of Use."

Wayfair Ex. 3, at 1 (filed as Decl. Jonathan Klein, Ex. A at 1). The terms and conditions contain

the following detailed, extensive arbitration agreement in clear typeface:

> YOU AND Wayfair AGREE TO GIVE UP ANY RIGHTS TO
> LITIGATE CLAIMS IN A COURT OR BEFORE A JURY OR TO
> PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE
> ACTION WITH RESPECT TO A CLAIM. OTHER RIGHTS
> THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH
> AS ACCESS TO DISCOVERY, ALSO MAY BE
> UNAVAILABLE OR LIMITED IN ARBITRATION.
>
> Any dispute between you and Wayfair, its agents, employees,
> officers, directors, principals, successors, assigns, subsidiaries or
> affiliates (collectively for purposes of this section, **'Wayfair'**)
> arising from or relating to these Terms of Use and their
> interpretation or the breach, termination or validity thereof, the
> relationships which result from these Terms of Use, including
> disputes about the validity, scope or enforceability of this arbitration
> provision (collectively, **"Covered Disputes"**) will be settled by
> binding arbitration in Suffolk County, Commonwealth of
> Massachusetts administered by the American Arbitration
> Association (AAA) under its Commercial Arbitration Rules, in
> effect on the date thereof. Prior to initiating any arbitration, the
> initiating party will give the other party at least 60-days' advanced
> written notice of its intent to file for arbitration. Wayfair will provide
> such notice by e-mail to your e-mail address on file with Wayfair
> and you must provide such notice by e-mail to
> [legal@wayfair.com].
>
> During such 60-day notice period, the parties will endeavor to settle
> amicably by mutual discussions any Covered Disputes. Failing such
> amicable settlement and expiration of the notice period, either party
> may initiate arbitration. The arbitrator will have the power to grant
> whatever relief would be available in court under law or in equity
> and any award of the arbitrator(s) will be final and binding on each
> of the parties and may be entered as a judgment in any court of
> competent jurisdiction. The arbitrator will not, however, have the
> power to award punitive or exemplary damages, the right to which
> each party hereby waives, and the arbitrator will apply applicable
> law and the provisions of these Terms of Use and the failure to do
> so will be deemed an excess of arbitral authority and grounds for
> judicial review. Wayfair and you agree that any Covered Dispute
> hereunder will be submitted to arbitration on an individual basis
> only. Neither Wayfair nor you are entitled to arbitrate any Covered
> Dispute as a class, representative or private attorney action and the
> arbitrator(s) will have no authority to proceed on a class,

representative or private attorney general basis. If any provision of the agreement to arbitrate in this section is found unenforceable, the unenforceable provision will be severed and the remaining arbitration terms will be enforced (but in no case will there be a class, representative or private attorney general arbitration). Regardless of any statute or law to the contrary, notice on any claim arising from or related to these Terms of Use must be made within one (1) year after such claim arose or be forever barred. For purposes of this section, these Terms of Use and related transactions will be subject to and governed by the Federal Arbitration Act, 9 U.S.C. sec. 1-16 (FAA).

Wayfair Ex. 3, at 5–6 (filed as Decl. Jonathan Klein, Ex. A at 5–6). "Wayfair" is defined as "Wayfair LLC and its affiliated brands, including Wayfair.com, Joss & Main, DwellStudio, AllModern, Birch Lane and Wayfair Supply[.]" Wayfair Ex. 3, at 1 (filed as Decl. Jonathan Klein, Ex. A at 1).

Plaintiff alleges that she was bitten and her home infested after receiving the headboard contaminated with bedbugs. Compl. ¶¶ 34–36, 38. Though she contacted Defendants in 2016, Plaintiff was unable to resolve her dissatisfaction with the purchase. *Id.* ¶¶ 41–42. She contends that some of Defendants' other customers have received bedbug infested products, and that Defendants have misrepresented the quality of their products and concealed information about them. *Id.* ¶¶ 16, 43, 75–76, 84, 91.

She asserts claims for breach of contract, negligence, breach of implied warranty of merchantability, fraudulent concealment, unjust enrichment, and breach of various federal and state consumer laws. *Id.* ¶¶ 68–158.

### III. Law

The Federal Arbitration Act "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted). To determine whether Plaintiff's claims are subject to arbitration, the trial court must consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so,

4

(2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The parties agree that New York law applies to the extent state law controls these issues. *See* Defs' Mem. L. Supp. Mot. Compel Arbitration & Stay Proceedings 8 n.1, ECF No. 15-1; Pl's Mem. Opp'n Defs' Mot. Compel Arbitration & Stay Proceedings ("Pl. Opp'n") 6, ECF No. 19.

"In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 174 (2d Cir. 2003)). Considered will be all relevant, admissible evidence. *Nicosia*, 834 F.3d at 229; *see also* Fed. R. Civ. P. 56(c). "[T]he court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

## IV. Application of Law to Facts

### A. Acceptance of the Terms and Conditions

Plaintiff contends that she has not entered into a binding arbitration agreement.

For the terms and conditions containing the arbitration agreement to constitute a binding, enforceable contract, Plaintiff must have unequivocally accepted the terms. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015); *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) ("Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.").

Plaintiff voluntarily acceded to the terms of use. She is a sophisticated individual. When placing an order for the headboard, she clicked "Submit Order," immediately under which was the text "By placing this order, you are agreeing to our terms and conditions[.]" *See supra*, Section II. She clicked on the link which took her to the terms and conditions. Plaintiff's protestation that she does not remember accessing them is not credible, since Defendants'

position is supported by technical evidence. The fact that Plaintiff changed her original headboard order from one color to another, and her own sophistication, make it more probable than not that she did take note of the terms and conditions—containing the arbitration provision—before concluding her purchase. In any event, "failure to read a contract is not a defense to contract formation." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 50 (E.D.N.Y. 2017) (collecting cases). That Plaintiff cancelled the order most closely associated in time with her clicking on the terms and conditions does not negate assent.

The placement of the terms and conditions supports the inference that Plaintiff manifested her assent to the terms and conditions. The text indicating that submitting an order would result in acceptance of the terms and conditions was clearly visible. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (concluding that plaintiff had notice of terms of use and arbitration provision when the checkout screen was "uncluttered," the text "including the hyperlinks to the Terms and Conditions . . . appear[ed] directly below the buttons for registration," the text was in a "dark print" "contrast[ing] with the bright white background," and the hyperlinks were underlined); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (compelling arbitration under New York law because "[r]egardless of whether he actually read the contract's terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"). A hyperlink to the terms and conditions was also on every page of the website Plaintiff visited.

Plaintiff's actions constitute agreement to Defendants' terms and conditions and, thus, the arbitration provision.

**B. Scope of the Agreement**

Plaintiff contends that her claims are not within the scope of the arbitration agreement, if found to be enforceable.

The terms and conditions delegate to the arbitrator "[a]ny dispute between [Plaintiff] and Wayfair . . . arising from or relating to these Terms of Use and their interpretation or the breach, termination or validity thereof [and], the relationships which result from these Terms of Use, including disputes about the validity, scope or enforceability of this arbitration provision." *See supra*, Section II. Plaintiff's arguments about whether her claims are within the scope of the arbitration agreement are for the arbitrator. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) ("[T]he presumption that a court should decide a question of arbitrability is overcome when there exists clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by an arbitrator." (internal quotation marks and alterations omitted)).

Regardless of who decides scope, however, Plaintiff's claims are unmistakably within the scope of the arbitration provision, which contains the broadly interpreted terms "arising from or relating to." *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (characterizing an arbitration clause as "broad" where it applied to "[a]ny dispute arising from the making, performance or termination of [the relevant agreement]").

The instant dispute arises from Plaintiff's purchase of a product through Defendants' website, emanating from the purchaser-seller relationship created by the website. Usage of the website is governed by Defendants' terms and conditions.

That the causes of action relied on by Plaintiff do not include breach of the terms and conditions does not change this conclusion. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20–21 (2d Cir. 1995) ("In determining whether a particular claim falls within the

scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims touch matters covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." (internal quotation marks and alterations omitted)).

Plaintiff's claims fall within the scope of the arbitration provision.

## C. Unconscionability

Plaintiff suggests that the arbitration agreement is unconscionable. It is unconscionable, she says, because she would be required to arbitrate in Massachusetts; she would be required to arbitrate under the American Arbitration Association's "complex and expensive" rules; she will lose her right to punitive or exemplary damages; the statute of limitations for her claims would be reduced to one year; Defendants are permitted to unilaterally modify the terms and conditions; and the arbitration provision would "gut" state law public injunctions. *See* Pl. Opp'n 16–18.

These contentions are properly before the arbitrator, since the terms and conditions put to the arbitrator all disputes "between [Plaintiff] and Wayfair . . . arising from or relating to these Terms of Use and their interpretation or the breach, termination or validity thereof [and], the relationships which result from these Terms of Use, including disputes about the validity, scope or enforceability of this arbitration provision." *See supra*, Section II; *see also Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC*, No. 19-CV-301 (ARR) (JO), 2019 WL 2051696, at *4 (E.D.N.Y. May 9, 2019) (concluding that a provision delegating to the arbitrators "all matters in difference . . . in relation to this insurance, including its formation and validity" delegated issues of unconscionability to the arbitrators).

Regardless of what forum decides the issue of unconscionability, the agreement is not unconscionable. "To characterize a term as unconscionable 'requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an

absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Berkson*, 97 F. Supp. 3d at 391 (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)). In some "exceptional cases[,] . . . a provision of a contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 534 N.E.2d at 829.

The instant agreement is not procedurally unconscionable; its presentation to Plaintiff and her manner of acceptance has been approved. *See, e.g.*, *Meyer*, 868 F.3d at 70–80; *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570 (LAK) (KHP), 2017 WL 7309893, at *11 (S.D.N.Y. Nov. 20, 2017) (concluding an agreement accessed through a "hyperlink and read through . . . to learn of the arbitration clause" is not procedurally unconscionable), *report and recommendation adopted as modified*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), *appeal dismissed*, 763 F. App'x 101 (2d Cir. 2019).

Nor is the agreement substantively unconscionable. Defendants have waived the complained-of forum and statute of limitations requirements, so the court need not address unconscionability of those provisions. *See* Tr. 24:4–9, Aug. 26, 2019; *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010) (enforcing an arbitration agreement subject to waiver of certain provisions). Plaintiff points to no language in the agreement that would "gut" injunctive relief that may be available under New York or another state's law; the court cannot conclude that any portion of the arbitration provision is unconscionable on this basis.

Plaintiff's remaining complaints have been dismissed by other courts. Use of American Arbitration Association rules does not render an arbitration agreement unconscionable. *See Bernardino*, 2017 WL 7309893, at *12 (compelling arbitration when the agreement in question directed use of American Arbitration Association rules); *Starke*, 2014 WL 1652225, at *1

(compelling arbitration under the rules of the American Arbitration Association or the National Arbitration Forum). An agreement to prohibit punitive or exemplary damages is not unreasonable. *See MQDC, Inc. v. Steadfast Ins. Co.*, No. 12-CV-1424 ERK MDG, 2013 WL 6388624, at *11 (E.D.N.Y. Dec. 6, 2013) (concluding that an arbitration agreement prohibiting punitive damages was enforceable and the arbitrator would interpret the provision).

The unilateral right to modify an agreement, without more, does not render the agreement unenforceable. *See Lebowitz v. Dow Jones & Co.*, 508 Fed. App'x 83, 84 (2d Cir. 2013) ("Under New York law, a contract is not illusory merely because its terms give discretion to one party to the contract . . . as every contract encompasses the implied duty of good faith and fair dealing." (citations omitted)); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015) (collecting cases). This provision is unconnected to the arbitration provision, and Plaintiff has made no showing that the agreement was ever changed. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

The agreement is not unconscionable.

### D. Party Enforcing the Arbitration Agreement

Plaintiff contends that Wayfair Inc. cannot enforce the arbitration agreement against her. "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Wayfair Inc. is incorporated by reference into the agreement, which requires arbitration of "[a]ny dispute between you and Wayfair [LLC], its agents, employees, officers, directors, principals, successors, assigns, subsidiaries or affiliates." *See supra*, Section II. Wayfair Inc. is an affiliate of Wayfair LLC.

Wayfair Inc. may enforce the arbitration agreement because Plaintiff's claims against it are identical to those against Wayfair LLC and the two entities have a close operating relationship. *See In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (noting that a non-party to an arbitration agreement may jointly control when "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) . . . there is a close relationship between the signatory and the non-signatory party"); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (concluding that a non-party parent corporation could enforce an arbitration agreement when the plaintiff alleged that the parent engaged in the conduct forming the basis of the plaintiff's claims).

### V. Conclusion

Defendants' motion to compel arbitration and stay the litigation is granted.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Dated: October 15, 2019
       Brooklyn, New York